UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENNIS GRIFFIN,

    Plaintiff,

vs.                                                 Case No.: 04-C-00512

ODISE BENNETT and
JONATHAN DELAGRAVE

    Defendants.

**DEFENDANTS' AMENDED BRIEF IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

NOW COME the defendants, ODISE BENNETT and JONATHON DELAGRAVE, by their attorneys, CRIVELLO, CARLSON & MENTKOWSKI, S.C., and hereby submit the following Amended Brief in Support of their Motion for Summary Judgment.

**INTRODUCTION**

The plaintiff, Dennis Griffin, was a "detention worker" hired by Racine County and assigned to work in the Racine County Detention Center. July 25, 2005 Affidavit of Marta L. Kultgen (hereinafter "Kultgen Aff."), exhibits A & B. On January 22, 2004, Mr. Griffin submitted to a drug test at the request of his employer. July 25, 2005 Affidavit of Jonathan J. Delagrave, (hereinafter "Delagrave Aff"), ¶¶ 3-5. See also Kultgen Aff., exhibit C. The test came back positive for marijuana. Kultgen Aff., exhibit D. Subsequent to the positive test, Mr. Griffin was provided a review with a supervisor attended not only by himself, but also three union representatives who appeared on his behalf. Kultgen Aff., ¶ 9. See also Kultgen Aff., exhibit E and Delagrave Aff., ¶ 6. When Mr. Griffin gave no response, explanation, nor offered any defense whatsoever regarding the

positive test he was terminated. Kultgen Aff., ¶ 11-16. See also Kultgen Aff., exhibits E & F and Delagrave Aff., ¶¶ 7-12.

As described in the Complaint, the only legal issue in this case is whether Mr. Griffin received adequate due process when, before his termination, he was given notice of the positive test result, and an opportunity to offer an explanation for it during a meeting in which he was accompanied by three union representatives. Plaintiff's Complaint, ¶ 16. Because Mr. Griffin was given a proper hearing to question, challenge, or otherwise explain his positive test result, the defendants are entitled to summary judgment dismissing the Complaint, on the merits, and with prejudice.

Summary judgment should also be granted because Mr. Griffin has failed to name any witnesses, lay or expert, to substantiate his claim at trial.

### **PERTINENT FACTS LEADING UP TO TERMINATION ON JANUARY 27, 2004**

The plaintiff, Dennis Griffin, was hired by Racine County on January 24, 2001 to the position of "detention worker." Kultgen Aff, exhibits A & B. See also plaintiff's Complaint, ¶ 3. Mr. Griffin worked at the juvenile detention facility located at 1717 Taylor Avenue, Racine, Wisconsin. Id.

On January 21, 2004, shortly before midnight, Mr. Griffin was requested to take a drug test based upon reasonable suspicion that he was "under the influence of marijuana at the workplace." Delagrave Aff., ¶ 3; Affidavit of Mary E. Nelson (hereinafter "Nelson Aff."), exhibit B at 41-42. He refused to take the test and was sent home. Delagrave Aff., ¶ 3. "[U]nder the guidelines of our policy, a refusal to take the drug test is deemed a failure." Nelson Aff., exhibit B at 14.

That next morning, on January 22, 2004, Mr. Griffin was called at home and asked to come in for a meeting. Nelson Aff., exhibit A at 23-24. Mr. Griffin understood that his refusal to take the

2

drug test was the reason for the meeting. Id. In attendance at the meeting were Mr. Griffin, Deputy Superintendent Delagrave, Superintendent Bennett, Human Resources representative Susan Richardson and union representative Todd Nelson. Kultgen Aff., exhibit C. During the meeting, Mr. Griffin was again asked to take a drug test. He agreed and was accompanied to the testing facility by Mr. Delagrave. Delagrave Aff., ¶ 5. See also Kultgen Aff., exhibit C. Following the drug test, Mr. Delagrave drove Mr. Griffin home. Delagrave Aff., ¶ 5.

On January 26, 2004, Racine County received notice that the drug test was positive for marijuana. Kultgen Aff., exhibit D. See also plaintiff's Complaint, ¶ 10. On January 27, 2004, a meeting was held with Mr. Griffin to discuss the results of the test. Kultgen Aff, ¶ 9, exhibit E. See also Delagrave Aff., ¶ 6. Those present included Marta Kultgen, the Human Resources Manager of the Racine County Human Resources Department, Mr. Delagrave, and three union representatives appearing on behalf of Mr. Griffin. Kultgen Aff., ¶ 9. See also Kultgen Aff., exhibit E and Delagrave Aff., ¶ 6. Mr. Griffin was allowed to first confer privately with the union representatives before the meeting began. Kultgen Aff., ¶ 10 and exhibit E.

Mr. Griffin knew of his positive drug test days before Racine County was notified. On January 23, 2004, four days prior to the January 27th meeting, he was contacted by the medical review officer to discuss the results. Kultgen Aff., ¶ 11; Nelson Aff., exhibit A at 36-37. See also Kultgen Aff., exhibit E; Delagrave Aff., ¶ 7. In his deposition, Mr. Griffin made it clear that he knew a disciplinary meeting would be coming, and testified that he understood that a positive drug test would result in disciplinary action that could include termination.

> Q. And you understood at that time [January 23rd, when Mr. Griffin received notice of the positive drug test] that a positive drug test would mean discipline?
> A. Yes.

> Q. And you knew at that time that a positive drug test could mean termination?
>
> A. I know it could mean that, yes.

Nelson Aff., exhibit A at 38. Even though he was facing discipline for a positive drug test, Mr. Griffin did not contact the union and when asked why not, he had no answer. Nelson Aff., exhibit A at 39.

Superintendent Bennett called Mr. Griffin at home on the morning of January 27th to ask him to come in. Mr. Griffin knew that the purpose of the meeting was to address the positive drug test and he also knew that his job was on the line.

> Q. When he [Mr. Bennett] called you on the 27th, you knew it had to do with the drug test?
>
> A. Yes.
>
> Q. And when he--as you have described it, he said to you your job is on the line, you need to come in, what did you take that to mean?
>
> A. **That I had to come in and see what they want to do as far as the drug test if they were going to suspend me or fire me or what.**

Nelson Aff., exhibit A at 40-41 (emphasis added).

At the outset of the meeting, Mr. Delagrave explained that he had received notice of a positive drug test. Kultgen Aff., exhibit E. Ms. Kultgen then afforded Mr. Griffin an opportunity to explain the positive results and asked him if there was anything he had to say about it. Delagrave Aff., ¶ 7-12. See also Kultgen Aff., ¶¶ 11-15. See also Kultgen Aff., exhibit E. Mr. Griffin's response was "no." Id. Mr. Griffin was also asked whether he had any discussion with the medical review officer regarding the test, and whether there was anything he wanted to share regarding the test. Id. Mr. Griffin again replied "no." Id. As there was no further explanation from Mr. Griffin regarding the positive test result, he was terminated. Kultgen Aff.,¶ 16, exhibits E-F. See also

Delagrave Aff., ¶ 12. During the entire course of this meeting, Mr. Griffin failed to offer any explanation for the positive result, or ask for further testing. Kultgen Aff., ¶¶ 11-15, exhibit E. See also Delagrave Aff., ¶¶ 8-12. At no point did he challenge the accuracy of the test result. Nelson Aff., exhibit A at 48.

Following his termination, Mr. Griffin contacted Mr. Delagrave to ask him why his last paycheck was short. Nelson Aff., exhibit A at 63. Mr. Delagrave told him that because the drug test came back positive, he would not be paid for the days off. Id., exhibit A at 63-64. Mr. Griffin did not contact a union representative regarding that decision because he did not "see a reason to." Id., exhibit A at 64.

Mr. Griffin did contact a union representative, William Willis, who attended the January 27th meeting, to ask him if Racine County could terminate him. Id., exhibit A at 51. Mr. Willis advised Mr. Griffin that because of the positive drug test, Racine County could terminate him. Id., exhibit A at 51-52.

Following his termination, Mr. Griffin never filed a grievance with the union to challenge either the termination or not getting paid for the period of time following the request for a drug test. Id., exhibit A at 51-53 & 64-65.

### PRE-TERMINATION AND POST-TERMINATION HEARING RIGHTS

Defendants do not challenge Mr. Griffin's due process rights prior to termination. Defendants likewise recognize Mr. Griffin's right to have filed a grievance following termination; an avenue he chose not to follow. The Agreement between Racine County and the union, to which Mr. Griffin was a member, contained provisions addressing discipline and discharge as well as detailing the grievance procedure following termination. Kultgen Aff., exhibit G.

Article 17.01, which addresses discipline and discharge, states:

**17.01** An employee may be dismissed or otherwise disciplined for just cause. When an employee is disciplined or is being considered for possible disciplinary action, the employee will be notified that such action is forthcoming and shall be entitled to seek Union representation and have that representative present at the disciplinary meeting. Any disciplinary action taken against an employee may be reviewed by use of the grievance procedure. The employee and the Union will be notified of any impending disciplinary action.

Id.

Article 8, which sets forth the grievance procedure, states:

**8.01** A grievance is a difference of opinion between an employee or employee and the Management, or between the Union and the Management, concerning the meaning and application of the terms of this Agreement. It is agreed that grievance should be filed promptly and therefore any grievance must be presented within ten (10) working days after the known occurrence of the event giving rise to the grievance.

**8.02** The following procedure shall be used for the adjustment of grievances:

STEP 1  Any grievance arising in the bargaining unit shall first be brought to the attention of the immediate supervisor, either by the employee affected, and/or a Union representative. A discussion concerning the grievance will be held in an attempt to resolve the matter. The supervisor will have a period of three (3) working days from the date of such discussion to answer the grievance.

STEP 2  If the grievance is not satisfactorily resolved within three (3) working days in step (1) above and the Union wishes to appeal the grievance further, the grievance shall be reduced to writing and presented to the department manager, or his/her designee, within three (3) working days of receipt of an unsatisfactory answer in step (1) above. A meeting will then be scheduled between the department manager or his/her designee and no more than three (3) representatives of the Union in an attempt to resolve the grievance. The aggrieved employee may be present as well as such persons as the department manager or his/her designee, may deem necessary to obtain all of the facts concerning the grievance. Such a meeting will be held within five (5) working days from the date of the presentation of the written grievance. The department manager, or his/her designee, shall give a written answer of the grievance within five (5) days from the date of the meeting.

STEP 3  If the grievance is not satisfactorily resolved in step (2) above, the Union may appeal the grievance further to the Labor Negotiator. Such an appeal must be made within five (5) working days of the date of receipt of the

written answer in step (2) above. A meeting will then be held between the parties in an attempt to resolve the grievance. Such a meeting will be held within five (5) working days of the date of the appeal of the grievance. The Labor Negotiator shall give a written answer to the grievance within five (5) working days from the date of the meeting.

STEP 4    If the grievance is not satisfactorily resolved in step (3) above, the Union may appeal the grievance further to the Finance and Human Resources Committee. Such an appeal must be made within five (5) working days of the date of receipt of the written answering in step (3) above. A meeting will then be held between the parties in an attempt to resolve the grievance. Such a meeting will be held within fifteen (15) working days of the date of appeal of the grievance. The Finance and Human Resources Committee shall give a written answer to the grievance within fifteen (15) working days from the date of the meeting.

STEP 5    If the answer of the Finance and Human Resources Committee still does not satisfactorily resolve the grievance, the Union may appeal the grievance further to arbitration. Such intent by the Union to arbitrate the grievance must be given by written notice to the Labor Negotiator, not later than twenty (20) working days following receipt of the answer from the Finance and Human Resources Committee. The arbitrator shall be selected from a list of five (5) names obtained from the Wisconsin Employment Relations Commission (WERC). In the event the parties cannot agree on an Arbitrator form among those five (5) appearing on the list, each party will alternately strike two (2) names and the remaining name will be the Arbitrator. The decision of the Arbitrator shall be binding upon the parties. The costs of the Arbitrator shall be shared equally by the parties. The cost of legal or stenographic services will be borne by the party or parties using the same. If a grievance is not answered within the time limits specified at any step of the procedure, the grievance will be automatically advanced to the next step of the procedure. However, the parties may extend the time limits contained in this procedure by mutual agreement.

**8.03** Any aggrieved employee, or any employee directly involved in the processing of a grievance, shall not suffer any loss in pay while in attendance at grievance meetings. In arbitration proceedings, only the grievant and no more than three (3) Union witnesses shall not suffer any loss of pay.

Id.

## ALLEGATIONS IN COMPLAINT

The Complaint, filed on May 28, 2004 and never amended, contains the following specific allegations against defendants:

FACTUAL BACKGROUND

6. Plaintiff Griffin for all times herein had a property interest in his job as a jail detention worker for Racine County.

7. Plaintiff was a public employee.

8. On January 16, Defendant Delagrave receives certain information alleging that Plaintiff Griffin illegally used drugs while working in the Detention Center.

9. Defendant Delagrave requested Plaintiff Griffin undergo a drug test on January 22.

10. On January 26 Defendant Delagrave was informed that Plaintiff Griffin drug test was positive.

11. On January 27 Plaintiff Griffin was terminated.

12. Plaintiff Griffin did not receive a Due Process Hearing before his termination.

13. Plaintiff Griffin denies ever using drugs in the Detention Center.

14. Defendants Bennett and Delagrave had no knowledge that Plaintiff ever used drugs in the workplace.

15. Plaintiff has suffered humiliation, pain and suffering because of the collective acts of the Defendant.

PLAINTIFF'S FIRST CAUSE OF ACTION

16. Plaintiff hereby alleges that he was denied Due Process of Law with respect to his loss of his liberty and property in the termination of his job on January 27, 2004 by the acts and conduct of the Defendants.

Complaint, ¶¶ 6-16 (May 26, 2004).

## MOTION

Defendants move this court for an order granting the defendants summary judgment dismissing the complaint of Dennis Griffin, upon its merits and with prejudice. This motion is made pursuant to Fed. R. Civ. P. 56 and Civil Local Rules 7.1 and 56.2, and is brought upon the grounds that Mr. Griffin cannot substantiate his claim as a matter of law. The grounds for this motion are as follows:

1. Prior to his termination, Mr. Griffin was given a proper hearing to question, challenge, or otherwise explain the positive drug test result which led to his termination, in compliance with due process requirements set down by the United States Supreme Court and Seventh Circuit Court of Appeals.

2. Mr. Griffin has failed to name any witnesses to substantiate his claim.

## SUMMARY JUDGMENT STANDARD

On a Motion for Summary Judgment, this court must apply the standard set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c).

> Under Rule 56, summary judgment provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried. Thus, the rule may be utilized to separate formal from substantial issues, eliminate improper assertions, determine what, if any, issues of fact are present for the jury to determine and make it possible for the court to render a judgment on the law when no disputed facts are found to exist.

Hinton v. Patnaude, 162 F.R.D. 435, 437 (N.D.N.Y. 1995).

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The non-moving party cannot rest on the pleadings alone, but must identify specific facts that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993); Murphy v. ITT Educ. Servs. Inc., 176 F.3d 934, 936 (7th Cir. 1999); Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events"). A defendant is entitled to put the plaintiff to his proof and demand a showing of the evidence. Navarro v. Fuji Heavy Indus., Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. Id. The plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand v. CF Indus., Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56(c). See also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995).

To defeat summary judgment, plaintiff cannot rest on his pleadings, but must produce specific material facts in support of his claim sufficient to sustain his burden at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The mere existence of a factual dispute does not defeat summary judgment. The requirement is that there be no genuine issue of *material* fact. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1968). A dispute concerning facts not material to determinative

issues does not preclude summary judgment. Donald v. Polk County, 836 F.2d 376, 379 (7th Cir. 1988). Nor is a "metaphysical doubt" with respect to the existence of a genuine issue of triable fact enough to preclude summary judgment. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**ARGUMENT**

**I.     Plaintiff Has Asserted Only One Cause of Action in His Complaint.**

In his Complaint, plaintiff has alleged only one cause of action. That single cause of action is that defendants violated plaintiff's due process rights "in the termination of his job on January 27, 2004." Complaint ¶ 16. Specifically, plaintiff alleges he did not receive a due process hearing prior to his termination on January 27, 2004. Id. ¶¶ 11 & 12.

In moving this court for summary judgment, defendants must focus on the single cause of action plead in the Complaint. Plaintiff defined the cause of action in the Complaint and identified those factual assertions that support that cause of action. Defendants challenge the factual and legal assertions in the Complaint by asserting that plaintiff was afforded a due process hearing prior to this termination on January 27, 2004. As the First Circuit stated in Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86 (1st Cir. 1996):

> The function of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.

Id. at 94.

**II.    Plaintiff Defines the Date of Termination as January 27, 2004.**

There is no dispute that the date of termination was January 27, 2004. In the Complaint, plaintiff alleges that the date of termination was January 27, 2004. Plaintiff also confirmed that date

during his deposition on February 18, 2005. In describing the course of events of January 27, 2004, Mr. Griffin gave the following description:

> A. After she told me I was terminated, then she asked me did I have any questions or anything to say.
>
> Q. And did you?
>
> A. No, I did not.
>
> Q. What was that?
>
> A. She had just said I was terminated. There was no reason for me to say anything, the decision was final.

Nelson Aff., exhibit A at 46.

### III. Plaintiff's Claim Must be Dismissed, as He Was Provided Adequate Due Process Before Termination.

As stated above, the Complaint only contains one cause of action set forth in a single paragraph. It alleges that the plaintiff "was denied due process of law with respect to the loss of his liberty and property in the termination of his job on January 27, 2004 by the acts and conduct of the Defendants." Complaint, ¶ 16. Thus, the only issue before the court is whether the January 27, 2004 meeting between Mr. Griffin, the three union representatives who appeared on his behalf, Jonathan Delagrave and Marta Kultgen, provided adequate "due process" to Mr. Griffin. Because the meeting satisfied all due process requirements as laid down by the United States Supreme Court, and as clarified by the 7th Circuit Court of Appeals, the plaintiff's claim should be dismissed.

#### A. Legal Standard

In <u>Loudermill v. Cleveland Board of Education</u>, 470 U.S. 532, 105 S. Ct. 1487 (1985), the United States Supreme Court set the standard for pre-termination due process.

> [T]he pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a

determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

The essential requirements of due process, and all that respondents seek or the Court of Appeals required, are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed actions should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

Loudermill, 470 U.S. at 546, 105 S. Ct. at 1485 (citations omitted).

As the Seventh Circuit noted in Sonnleitner v. York, 304 F.3d 704, 711 (7th Cir. 2002), "Loudermill does not mandate any hard and fast rules on the specifics of predisciplinary due process." The Seventh Circuit has further noted that:

The hearing need not constitute a full evidentiary hearing that definitively resolves propriety of the discharge, so long as it serves as "an initial check against mistaken decisions--essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true in support of the proposed action."

Greer v. Amesqua, 212 F. 3d 358, 367 (7th Cir. 2000), quoting Loudermill, 470 U.S. at 545-46, 105 S.Ct. 1487. In discussing the timing of the notice, the Seventh Circuit stated in Staples v. City of Milwaukee, 142 F.3d 383 (7th Cir. 1998):

We have held before that due process requires the notice of the charges and the hearing to be given in advance of the hearing. This does not necessarily mean days or weeks in advance, but even a few hours' warning would permit the employee to gather his thoughts and his evidence and to make an informed decision about the best way to respond to the charges.

Id. at 385-86.

In light of the flexibility inherent in the Supreme Court's approach to pretermination hearings under *Loudermill*, we would not want to say that contemporaneous notice at hearing could never satisfy due process. Whether it does or not will depend on what has taken place before the hearing, on the nature of the violation the employee is charged with, and on the risk of error if the employee does not have some advance notice of the hearing.

Id. at 387.

### B. The January 27, 2004 meeting was constitutionally adequate.

The January 27, 2004 meeting satisfied the essential requirements of due process because it provided Mr. Griffin both "notice" and "an opportunity to respond." At the meeting, he acknowledged that the medical review officer had called him prior to the meeting to inform him of the positive test result. Kultgen Aff., ¶ 11 and exhibit E. See also Delagrave Aff., ¶ 8. Because he learned of the positive drug test on January 23rd (days before his employer), he had several days to prepare for the inevitable call and meeting that he knew were to occur. When he was called to attend the meeting, he knew it was to discuss the positive drug test, which was the only known disciplinary problem. While at home he also knew that a decision would be made as to whether he would be suspended or fired. Nelson Aff., exhibit A at 40-41. Mr. Griffin even had the opportunity to contact a union representative between learning of the test result on January 23rd and receiving the phone call on January 27th in order to prepare any explanation or defenses he wished to offer. Mr. Griffin's decision not to contact the union does not negate the notice he received, his actual knowledge and his opportunity and ability to respond to the positive drug test.

Additionally, prior to the January 27, 2004 meeting, Mr. Griffin met with union representatives Todd Nelson, William Willis, and Barbara Governatori, who appeared in support of and on his behalf. Kultgen Aff., ¶¶ 9-10 and exhibit E. Thus, Mr. Griffin had the benefit of the collective experience and the counsel of not one, but three union representatives, who even accompanied him to the meeting. He knew of the topic of the meeting and had ample opportunity to prepare some sort of explanation or defense. Accordingly, Racine County complied with the "notice" of due process laid out by the United States Supreme Court in Loudermill v. Cleveland Board of Education, 470 U.S. 532, 105 S. Ct. 1487.

The January 27, 2004 meeting also afforded Mr. Griffin the "opportunity to respond." In fact, when Mr. Griffin remained silent on his own behalf, Ms. Kultgen asked him specific questions in an attempt to illicit some response. For example, Ms. Kultgen asked Mr. Griffin if there was anything further that he would like to share regarding his conversation about the positive test result with the medical review officer. Kultgen Aff., ¶ 7 and exhibit E. See also Delagrave Aff., ¶ 8. Mr. Griffin replied "No." Id. Mr. Griffin was then asked if there was anything at all he wanted to say about his positive test results. Kultgen Aff., ¶ 13 and exhibit E. See also Delagrave Aff., ¶ 9. He again replied "No." Id. The bottom line is that after ample opportunity to prepare, consult with union representatives, and speak in his defense, Mr. Griffin did not offer any explanation, reason, or excuse regarding his positive drug test result. Kultgen Aff., ¶¶ 13-15 and exhibit E. See also Delagrave Aff., ¶¶ 11. It is for this reason that Mr. Griffin was ultimately released from his employment.

The January 27, 2004 meeting with Mr. Griffin alleviated the concerns enumerated by the Seventh Circuit in Lalvani v. Cook County, 269 F.3d 785, 794 (7th Cir. 2001), in that it "serve[d] as an initial check against mistaken decisions--essentially, in determination of whether there are reasonable grounds to believe that the charges against the employee are true in support of the proposed action." Mr. Griffin's silence speaks volumes. It is apparent that he did not speak up because there were no "reasonable grounds" to believe that the charges were anything but true. Accordingly, the action taken by the defendants, and by Racine County in terminating Mr. Griffin was necessary, appropriate, and complied with the requirements of due process as laid out by the United States Supreme Court and the Seventh Circuit Court of Appeals.

**IV.    As a Separate and Additional Ground, Mr. Griffin's Claim Must be Dismissed, as He Has Failed to Name Any Witnesses to Testify in Support of His Claim.**

15

Under the terms of the Scheduling Order drafted by this court, the plaintiff was given until November 5, 2004, to "notify the defendants of any lay witnesses the plaintiff may call at trial." Scheduling Order, ¶ 1. To date, no such notification has yet been received by the defendants. Nelson Aff., ¶ 2. A check of the PACER system also reflects that no such notification is on file with the court. Id. ¶ 3.

The Scheduling Order also dictates that "On or before November 20, 2004, the plaintiff shall notify the defendants of any expert witnesses the plaintiff may call at trial, and shall submit with that notice a report…" Scheduling Order, ¶ 2. Again, to date, no such notification or reports have been received by the defendants. Id. ¶ 4. A check of the PACER system also reflects that no such notification, and no such reports, are on file with the court. Id. ¶ 5.

Accordingly, the plaintiff has no witnesses to substantiate any facts in support of his claim.

## **CONCLUSION**

Based upon the foregoing arguments and authorities, it is respectfully requested that this court dismiss the plaintiff's complaint, on the merits, and with prejudice, together with the costs and disbursements associated with this motion.

Dated this 25th day of July, 2005.

        CRIVELLO, CARLSON & MENTKOWSKI S.C.,
        Attorneys for defendants, Odise Bennett and Jonathan Delagrave

BY:   /s/ Mary E. Nelson
       RAYMOND J. POLLEN
       State Bar No.: 1000036
       MARY E. NELSON
       State Bar No.: 1000518
       NATHAN J. BAYER
       State Bar No.: 1032312

**POST OFFICE ADDRESS:**
710 North Plankinton Avenue
Milwaukee, WI 53203
(414) 271-7722