UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENNIS GRIFFIN,

     Plaintiff,

vs.                                   Case No.: 04-C-00512

ODISE BENNETT and
JONATHAN DELAGRAVE

     Defendants.

## JULY 25, 2005 AFFIDAVIT OF MARTA L. KULTGEN

STATE OF WISCONSIN    :
                                 :SS
COUNTYOF RACINE     :

MARTA L. KULTGEN, being first duly sworn, deposes and states as follows:

1.     I, Marta L. Kultgen, am the Human Resources Manager of the Racine County Human Resources Department, 1717 Taylor Avenue, Racine, WI 53403. Part of my duties involve handling human resource matters at the Racine County Juvenile Detention Center.

2.     Exhibits A-F, attached to this affidavit, are excerpts of Mr. Griffin's personnel file. Mr. Griffin was a "detention worker" hired by Racine County to work at the Racine County Juvenile Detention Center. These records are kept in the normal course of business.

3.     Attached hereto as Exhibit A is a letter to Mr. Griffin dated January 24, 2001 stating that he was hired to the position of "Detention Worker."

4.     Attached hereto as Exhibit B is a copy of the job descriptions for a "Detention Worker" at the Racine County Juvenile Detention Center.

5.      Attached hereto as Exhibit C is a memo from Susan Richardson, Deputy Director of Human Resources in Racine County, regarding the request made to Mr. Griffin to submit to a drug test on January 22, 2004.

6.      Attached hereto as Exhibit D is a copy of the positive test result indicating that Mr. Griffin's urine tested positive for marijuana on January 22, 2004.

7.      Attached hereto as Exhibit E is a memo, authored by me, documenting the January 27, 2004, meeting with Dennis Griffin to discuss his positive drug test results.

8.      Attached hereto as Exhibit F is a copy of the document memorializing Mr. Griffin's termination effective January 27, 2004.

9.      On January 27, 2004, at approximate 8:40 a.m., I attended a meeting with Dennis Griffin to discuss his positive drug test results.  Also present at the meeting were Jonathan Delagrave, a Detention Supervisor at the Racine County Juvenile Detention Center, and union representatives Todd Nelson, William Willis, and Barbara Governatori, who were there in support of Mr. Griffin.

10.     Prior to the start of the January 27, 2004 meeting, Mr. Griffin met and consulted privately with the three union representatives.

11.     At the outset of the January 27, 2004 meeting, I asked Mr. Griffin whether the medical review officer had previously called him to inform him of the positive test result.  Dennis replied "yes."

12.     At the January 27, 2004 meeting, I asked Mr. Griffin if there was anything further that he would like to share regarding his conversation with the medical review officer.  Dennis replied "no."

13. At the January 27, 2004 meeting, I asked Mr. Griffin if there was anything at all he wanted to say at all about his positive drug test result. He replied "no."

14. Mr. Griffin was afforded an opportunity at the January 27, 2004 meeting to offer any thoughts or explanations for his positive test result.

15. At the January 27, 2004 meeting, Mr. Griffin did not offer any explanation, reason, or excuse regarding his positive test result.

16. At the end of the January 27, 2004 meeting, Mr. Griffin was terminated from his position at the Racine County Juvenile Detention Center.

17. Attached hereto as Exhibit G are Articles VIII and XVII from the Agreement setting forth Terms and Conditions of Employment as Agreed to Between Racine County and the Human Services Department Employees Unit Belle City Lodge No. 437, District 10 International Association of Machinists and Aerospace Workers Unit II (eff. 1/1/02). This Agreement applied to Mr. Griffin.

Pursuant to 28 U.S.C. Sec. 1746 I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on July 25, 2005.

 /s/ Marta L. Kultgen

Marta L. Kultgen

RACINE COUNTY HUMAN RESOURCES
1717 Taylor Avenue
Racine, WI 53403
(262) 638-6312

January 24, 2001

Dennis Griffin
1635 Edgewood Avenue
Racine WI 53404

Dear Dennis:

Congratulations on your new position with Racine County.

On your first day, January 30, 2001, please report to Maria Nabors at
8:00 a.m. at the Human Resources Dept.

| | |
|---|---|
| Job Title: | Detention Worker |
| Supervisor: | Odise Bennett |
| Department: | Human Services |
| Address: | 1717 Taylor Avenue |
| | Racine WI 53403 |
| New Hire Date: | January 30, 2001 |
| Normal Work Hours: | 12:00 am - 8:00 am, 3rd Shift |
| Status: | Full-Time, Regular, 40 hrs/week |
| Salary: | $11.22, Hr. |

Attached are:
1. Appointments which must be met prior to your first day
   of employment.
2. Documents you must bring on your first day of
   employment.
3. A list of benefits to which you may be entitled.

This job offer is contingent upon successful completion of orientation
and the results of your physical examination.

If you have any questions, please call the Human Resources Department at
638-6680.

Sincerely,

Marta Kultgen
Marta Kultgen
Human Resources Manager

c: Odise Bennett
   Daris Hodges
   Vince Gloria
   Helain Andersen

newhire.ltr



**RACINE COUNTY**

# DETENTION WORKER
## Human Services Department

## Basic Function

To supervise juveniles, maintain a secure and safe environment, and ensure policies, procedures and programs are implemented and enforced; and to perform related work as required for Human Services Department's Detention Center.

## Essential Duties

1. Supervise and care for juveniles within established policies and procedures.
2. Maintain a secure and safe environment.
3. Provide basic needs of youth, such as food, clothing, personal supplies, bedding, medical needs, and other supplies.
4. Perform general housekeeping and cleaning duties, operate laundry equipment, and other related duties, as required.
5. Maintain accurate records, including written daily behavioral reports, room checks, disciplinary reports and medication logs.
6. Maintain discipline and enforce policies and procedures pertaining to the Center; may physically restrain juveniles when appropriate to quell disturbances to maintain a safe environment.
7. Conduct room and personal searches for cleanliness, contraband, and damages.
8. Provide juveniles with positive role models, ie., personal values, dress, behavior.
9. Provide and maintain a positive environment for the public and other staff.
10. Provide services to juveniles involved in alternate detention programs.
11. Administer first aid, as needed.
12. Perform other related duties as needed; answering detention and crisis telephone.
13. Monitor and operate electronic and manual equipment.

## Supervision Received

Receives supervision from Detention Center Shift Supervisors.

## Qualifications
## Education and Experience

- Requires a high school diploma or certified equivalency.
- Requires previous experience in youth programming.
- Requires good physical health.
- Ability to communicate effectively, both orally and in writing.
- Ability to establish and maintain effective working relationships with the public and staff personnel.
- Requires a residential telephone number available to Detention Supervisors.
- Some knowledge of adolescent behavior, inter-personal relations, and social interaction.
- Ability to serve as a positive role model for juveniles and provide effective directions and supervision and to take immediate appropriate action.
- Ability to detect and recognize potentially hazardous situations.
- Requires prompt and regular attendance on the job.


DEFENDANT'S EXHIBIT
B

This description has been prepared to assist in properly evaluating various classes of responsibilities, skills, working conditions etc. present in the classification. It is intended to indicate the kind of tasks and characteristic levels of work difficulty that will be required of positions that will be given this title. It is not intended as a complete list of specific duties and responsibilities. Nor is it intended to limit or in any way modify the right of any supervisor to assign, direct and control the work of employees under his/her supervision. The use of a particular expression or illustration describing duties shall not be held to exclude other duties not mentioned that are of a similar kind and level of difficulty.

JD374
Revised: 11/85
        12/91
        5/93

January 22, 2004

Meeting held at 11:45 a.m. with Dennis Griffin, Detention Center Worker, Jonathan Delagrave, Detention Supervisor, Odise Bennett, Detention Superintendent, Todd Nelson, union representative, Susan Richardson, HR Department.

Mr. Griffin was informed by Mr. Delagrave that he needed to take the drug test based on reasonable suspicion. Mr. Griffin had refused to take the test when first notified at 12:00 this morning. I told Mr. Griffin that he is being requested a second time today to have the testing done with a union representative present.

Mr. Griffin said he felt that he was being picked on due to the fact he would be escorted to the drug test. He said the County drug policy did not mention this and the November random drug/alcohol test he took in November he was allowed to drive himself. He mentioned that when he later read the Juvenile Detention Center Drug Testing policy, he saw that it did discuss escorting the employee to the test. I did tell him there was a difference between random testing and reasonable suspicion testing and that due to liability issues, if the County reasonably suspects he is under the influence of drugs, he would not be allowed to drive himself.

Mr. Griffin did allow Mr. Delagrave to take him for the drug test. Mr. Delagrave told Mr. Griffin that he would then drop him off at home. Mr. Griffin wanted to know why he wouldn't be dropped off here and I again explained liability issues under reasonable suspicion testing.


Susan Richardson
Deputy Director Human Resources


DEFENDANT'S EXHIBIT
C



## ALL SAINTS HEALTHCARE
### ST. LUKE'S MEDICAL GROUP
### ST. MARY'S MEDICAL GROUP

## RESULTS OF CONTROLLED SUBSTANCE TEST

☐ DOT - in accordance with    ☑ Non-DOT
49 CFR Part 40

Employee: _Griffin   Dennis       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_
          (Last)        (First)       (MI)       (Social Security or ID Number)

Company: _Racine County Detention_

Reason for test:    ☐ Pre-employment      ☐ Random      ☐ Post Accident

                      ☑ Reasonable cause      ☐ Return to Duty      ☐ Follow-up

Date of drug test (collection date): _1    22    04_
                                  Month     Day     Year

(Collection site): _All Saints Healthcare Northwestern Ave_

(Laboratory performing the test): _Quest Deagnostics Schaumberg IL_

Test results--check only one      negative _____
                                     or
                                   positive _____✗_____
                                   for the
                                   following:  ☑ Marijuana

                                        ☐ Cocaine

                                        ☐ PCP (Phencyclidine)

                                        ☐ Opiates

                                        ☐ Amphetamines

                                        ☐ Other _____

Name of Medical Review Officer

_1/23/04_
Date

FEB - 2 2004
RACINE COUNTY
HUMAN RESOURCES DEPT.

DEFENDANT'S
EXHIBIT
D

Rev. 8/01    1970293

Documentation

Dennis Griffin Termination
1/27/04

On 1/27/04 at approximately 8:40am Marta Kultgen and Jonathan Delagrave met with Dennis Griffin and union representatives regarding his positive drug test result. The union met with Dennis privately and then called Jonathan and myself into the conference room. Jonathan explained we received notice of a positive drug test result. Jonathan asked Dennis if he was aware of the Juvenile Detention Center Drug and Alcohol Testing Policy, Dennis replied that he was. I asked Dennis if there was anything he had to say regarding the positive drug test results, he replied "no". I asked if the physician had called him, I restated to ask whether the MRO, Medical Review Officer, physician had called him and discussed the results with him. Dennis replied, "yes." I asked if there was anything we needed to know regarding that conversation. Dennis replied, "no". Therefore it was decided that he would be terminated. The union representative asked why it was termination and not some other level of discipline. I explained it was a positive test result to an illegal controlled substance and that we were following the Detention Center's Drug and Alcohol Testing Policy. The union asked again why not some other form of discipline. I explained again that it was a positive test result to an illegal controlled substance and that we had terminated other employees who had positive test results. Dennis really did not say much, his responses to my questions were just yes or no. I explained he would have to leave any county property but he should take his personal property home.


DEFENDANT'S
EXHIBIT
E

# RACINE COUNTY
## Employee Discipline Report

Name Dennis Griffin     Position Detention Worker     Date 1/27/04

Department HSD - Detention     Hire Date 1/30/01

### Previous Discipline

| Date | Discipline | Violation |
|------|-----------|-----------|
| 4/21/03 | Oral | Attendance |
| 7/22/03 | Written | Attendance |
|  |  |  |
|  |  |  |

### Discipline

- [ ] Conference Type:
- [ ] Oral Warning
- [ ] Written Warning
- [ ] Suspension, _____ day
- [x] Termination
- [ ] Deferred Discipline at present

### Nature of Violation

- [ ] Attendance / Tardiness
- [ ] Conduct / Behavior
- [ ] Performance
- [x] Other

### Provide details of the violation and impact (use the back of the page, if necessary)

On January 22, 2004, Mr. Griffin went for a drug test that returned positive for an illegal controlled substance; therefore, violating Racine County's policy of a drug-free workplace and Human Services Department, Juvenile Detention Center Drug & Alcohol Testing Policy.   ***Please see back***

Expected improvement and/or standards for the future:

Next discipline to be taken*:

*Probationary / trial employees – Next discipline taken may include termination.

- [ ] This discipline report will be reviewed to determine level of discipline to be administered.  I have received a copy of this report and I understand I will be notified of the specific disciplinary action.
- [ ] Verbal Warnings – I have received a copy of this report.
- [ ] Written Warnings & Suspensions – I understand that this discipline report will be entered into my personnel record and I have received a copy of this report.
- [ ] I understand the Racine County Employee Assistance program is available to me to assist in personal, financial and other programs*

_Dennis Griff_     1-27-04
**Employee Signature**     **Date**

_E. Bennett_    1-27-04
**Supervisor**     **Date**

**Union Representative Present** _Todd Nelson  B Governik_

*To request the assistance of the Racine County Employee Assistance Program—Contact the Family Service of or contact the Racine County Human Resources Department

Employee Discipline Form.dot
10/2001

DEFENDANT'S EXHIBIT F

On January 16, 2004, Deputy Superintendent Jonathan Delagrave received information that Mr. Griffin was alleged to be engaging in illegal use of a drug substance while working in the detention center. This is a violation of Racine County's drug policy.

Mr. Delagrave requested that Mr. Griffin undergo a drug test on January 22, 2004, under reasonable suspicion that Mr. Griffin may be using. Mr. Delagrave provided Mr. Griffin transportation for the drug test.

On January 26, 2004, the Superintendent was informed that Mr. Griffin's drug test returned positive for an illegal drug (marijuana).

Racine County's Drug-Free Workplace has been violated by Mr. Griffin's positive result. Effective January 27, 2004, Mr. Griffin's employment with Racine County is terminated.

2002 - 2004

AGREEMENT

setting forth

TERMS AND CONDITIONS
OF EMPLOYMENT

As Agreed To Between

RACINE COUNTY

and the

HUMAN SERVICES DEPARTMENT EMPLOYEES UNIT
*BELLE CITY LODGE NO. 437, DISTRICT 10*
*INTERNATIONAL ASSOCIATION OF MACHINISTS*
*AND AEROSPACE WORKERS*
*UNIT II*

*****

*EFFECTIVE JANUARY 1, 2002*

EXHIBIT

tabbies

G

# ARTICLE VII
## JOB POSTING

**7.01** When vacancies occur, or when there are additional positions added to existing staff, or newly created positions, those who feel qualified may make application for same and the available jobs will be posted on bulletin boards and through email stating the nature of the positions, unit, shift, area of work, qualifications, and salary range. Such vacancies or additional positions will be posted for a five (5) working day period. Outside of the Unit applicants will not be interviewed until all bargaining unit applicants who apply are considered. Employees who are in the same classification as the posted position will be deemed to meet the minimum qualifications of that posted position. (This includes an Economic Support Specialist (ESS) posting for Financial & Employment Planner (FEP)). The department manager, from those who apply, will make a selection based on seniority, skill and ability, unless a qualified employee does not apply, in which case voluntary hiring shall be employed. Where the skill and ability of two (2) or more bidding employees is substantially equal, seniority shall be the determining factor. The Union designee will be notified as to those applicants who apply for posted positions and the selection for that position after an individual is selected.

**7.02** Nothing in this Article is intended to limit Management's right to reassign employees duties within their classification. In making an assignment, Management will recognize seniority, skill and ability. Management will notify the Union in advance of any employee being reassigned.

**7.03** The employee selected will have thirty (30) days in which to demonstrate suitability for the position. Such period may be extended thirty (30) days by the County, if, in the County's judgment additional time is needed to evaluate an employee's suitability for the position. An employee provided the opportunity and failing to qualify at the end of the trial period, will return to his/her previous position. However, an employee at his/her option may return to his or her previous position within a fifteen (15) working day period after starting a new position.

**7.04** In the event the Union is dissatisfied with the department manager's selection, the grievance procedure is available for relief.

**7.05** It is intended and agreed that under the circumstances of emergency anyone may be assigned by the department manager notwithstanding the provisions as to time of job posting. The emergency assignment may continue until the expiration of the five (5) working day period provided for job posting. The period of emergency shall be understood to be the normal period of job posting as provided for in this Agreement. It is understood that any employee may apply for a vacancy or additional position posted according to the provisions of this Article, whether it be an upgrade, downgrade, or lateral move.

**7.06** Employees transferring into this unit from another bargaining unit will be required to serve the probationary period specified in Article 6.01.

**7.07** Anyone hired into the position of Social Worker/Case Manager on or after October 1, 1995 will not be allowed to post for any other Social Worker/Case Manager position for a period of eighteen (18) months from the date of hire as a Social Worker/Case Manager.

# ARTICLE VIII
## GRIEVANCE PROCEDURE

**8.01** A grievance is a difference of opinion between an employee or employees and the Management, or between the Union and the Management, concerning the meaning and application of the terms of this Agreement. It is agreed that grievances should be filed promptly and therefore any grievance must be presented within ten (10) working days after the known occurrence of the event giving rise to the grievance.

**8.02** The following procedure shall be used for the adjustment of grievances:

STEP 1 Any grievance arising in the bargaining unit shall first be brought to the attention of the immediate supervisor, either by the employee affected, and/or a Union representative. A discussion concerning the grievance will be held in an attempt to resolve the matter. The supervisor will have a period of three (3) working days from the date of such discussion to answer the grievance.

STEP 2 If the grievance is not satisfactorily resolved within three (3) working days in step (1) above and the Union wishes to appeal the grievance further, the grievance shall be reduced to writing and presented to the department manager, or his/her designee, within three (3) working days of receipt of an unsatisfactory answer in step (1) above. A meeting will then be scheduled between the department manager or his/her designee and no more than three (3) representatives of the

Union in an attempt to resolve the grievance. The aggrieved employee may be present as well as such persons as the department manager or his/her designee, may deem necessary to obtain all of the facts concerning the grievance. Such a meeting will be held within five (5) working days from the date of the presentation of the written grievance. The department manager, or his/her designee, shall give a written answer of the grievance within five (5) working days from the date of the meeting.

STEP 3  If the grievance is not satisfactorily resolved in step (2) above, the Union may appeal the grievance further to the Labor Negotiator. Such an appeal must be made within five (5) working days of the date of receipt of the written answer in step (2) above. A meeting will then be held between the parties in an attempt to resolve the grievance. Such a meeting will be held within five (5) working days of the date of appeal of the grievance. The Labor Negotiator shall give a written answer to the grievance within five (5) working days from the date of the meeting.

STEP 4  If the grievance is not satisfactorily resolved in step (3) above, the Union may appeal the grievance further to the Finance and Human Resources Committee. Such an appeal must be made within five (5) working days of the date of receipt of the written answer in step (3) above. A meeting will then be held between the parties in an attempt to resolve the grievance. Such a meeting will be held within fifteen (15) working days of the date of appeal of the grievance. The Finance and Human Resources Committee shall give a written answer to the grievance within fifteen (15) working days from the date of the meeting.

STEP 5  If the answer of the Finance and Human Resources Committee still does not satisfactorily resolve the grievance, the Union may appeal the grievance further to arbitration. Such intent by the Union to arbitrate the grievance must be given by written notice to the Labor Negotiator, not later than twenty (20) working days following receipt of the answer from the Finance and Human Resources Committee. The arbitrator shall be selected from a list of five (5) names obtained from the Wisconsin Employment Relations Commission (WERC). In the event the parties cannot agree on an Arbitrator from among those five (5) appearing on the list, each party will alternately strike two (2) names and the remaining name will be the Arbitrator. The decision of the Arbitrator shall be binding upon the parties. The costs of the Arbitrator shall be shared equally by the parties. The cost of legal or stenographic services will be borne by the party or parties using the same. If a grievance is not answered within the time limits specified at any step of the procedure, the grievance will be automatically advanced to the next step of the procedure. However, the parties may extend the time limits contained in this procedure by mutual agreement.

8.03  Any aggrieved employee, or any employee directly involved in the processing of a grievance, shall not suffer any loss in pay while in attendance at grievance meetings. In arbitration proceedings, only the grievant and no more than three (3) Union witnesses shall not suffer any loss of pay.

## ARTICLE IX
## NO STRIKE OR LOCKOUT

9.01  The Union shall not cause or support, nor shall any employee or employees take part in any strike, intentional slow down, or any other interference with or stoppage of the County's work. Any employee who violates this provision or participates in its violation shall be subject to immediate discharge or other disciplinary action. The County will not lock out any of its employees during the term of this Agreement.

## ARTICLE X
## HOURS OF WORK

10.01  The normal work week shall begin at 7:30 a.m. Monday and end on the following Monday at 7:30 a.m., and normally consist of forty (40) hours. Any hours worked in excess of forty (40) hours per week or eight (8) hours per day shall be considered overtime.

10.02  The normal work days shall be Monday through Friday and normally will consist of eight (8) hours per day.

10.03  Where it would facilitate the normal operation of the department, the County may from time to time vary the starting and quitting time of an employee or employees, but shall not, pursuant to this clause, change the number of hours in the normal work week or work day. It is understood that when such variance is to be made the County will attempt to make such variation in the normal hours amenable to the employees involved. Employees may request a variation in starting or quitting times.

If the employee's return to active work is for a total of at least 7 work days or less, the elimination period will start with the first day of the original period of total disability. The elimination period will not be increased by the number of days of return to active work.

If the employee's return to active work is for a total of at least 8 work days but not more than a total of 30 calendar days, the elimination period will start with the first day of the original period of total disability and the elimination period will be increased by the number of days of return to active work.

If the employee's return to active work is for a total of 31 or more calendar days, the elimination period will start over and apply to the new period of total disability.

Any part of a calendar day on which there has been a return to active work shall count as a whole day. Fractions of days shall not be added together for credit under this provision.

The elimination period is defined as the waiting period prior to eligibility for long term disability benefits.

**16.02** In order to qualify for sick leave benefits, an employee must report to his/her immediate supervisor, or his/her designee if the supervisor is unavailable, that they are sick no later than one half (1/2) hour prior to the time at which the employee is scheduled to report for work. Each employee claiming sick leave benefits is subject to check to verify the alleged illness by a County representative. Any claim for sick leave benefits of five (5) days or more must be accompanied by a doctor's certificate.

**16.03** Accrued, unused sick leave benefits shall be paid at the rate of fifteen dollars ($15.00) per day upon death or retirement of the employee or for those employees with one (1) year or more seniority upon their termination of employment. Such benefits shall be deemed not to be on account of personal sickness or accident disability for purposes of the Social Security Act.

## ARTICLE XVII
## DISCIPLINE AND DISCHARGE

**17.01** An employee may be dismissed or otherwise disciplined for just cause. When an employee is disciplined or is being considered for possible disciplinary action, the employee will be notified that such action is forthcoming and shall be entitled to seek Union representation and have that representative present at the disciplinary meeting. Any disciplinary action taken against an employee may be reviewed by use of the grievance procedure. The employee and the Union will be notified of any impending disciplinary action.

## ARTICLE XVIII
## INSURANCE

**18.01** New employees who are eligible for the insurance benefit coverages specified in this Article will receive such coverage on the first day of the month following the first thirty (30) calendar days of their employment.

**18.02** Effective January 1, 1981, regular part time or limited term employees who after that date become eligible for insurance benefit coverage under the provisions of Article XIX-paragraph 19.02 and 19.04 will be required to pay a portion of the cost of their insurance benefit coverages. Such regular part time or limited term employees who work at least one thousand forty (1040) hours per calendar year but less than one thousand five hundred sixty (1560) hours per calendar year are required to pay one-half (1/2) of the monthly premium cost for their insurance benefit coverages. Regular part time or limited term employees who work one thousand five hundred sixty (1560) hours per calendar year will be required to contribute the same portion of the cost of their insurance benefit coverages as regular full time employees. Regular part time and limited term employees who were eligible for insurance benefit coverages prior to the July 1, 1981, would continue to receive such coverages on the same basis as regular full time employees.

**18.03** At no cost to the employee, the County will provide a group life insurance and AD&D policy equal to one times an employee's annual salary rounded to the nearest Five Hundred ($500) for each full time employee or for those employees who are so eligible under the provisions of Paragraph 18.02 above. This amount will be adjusted as of January 1 of each year. The minimum amount will be Fifteen Thousand ($15,000) Life and Fifteen Thousand ($15,000) AD&D.

To be eligible for this benefit, the employee must complete and return proper enrollment forms within thirty (30) days of their start date. Employees failing to enroll within this thirty (30) day period can only subsequently enroll during the County's annual open enrollment period and subject to the conditions of the life insurance plan.

11