UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**DENNIS GRIFFIN,**

        **Plaintiff,**

v.                                             **Case No. 04-C-512**

**ODISE BENNETT,
JONATHAN DELAGRAVE,**

        **Defendants.**

## DECISION AND ORDER

On May 28, 2004, Dennis Griffin ("Griffin") filed his complaint in this Court against Odise Bennett ("Bennett") and Jonathan Delagrave ("Delagrave") (collectively "the Defendants"). Griffin brings a claim pursuant to 42 U.S.C. § 1983, alleging that the Defendants violated his Fourteenth Amendment due process rights. Specifically, Griffin claims that his termination, without due notice, deprived him of both liberty and property. Before the Court is the Defendants' motion requesting summary judgment.

### BACKGROUND

Racine County hired Griffin as a detention worker at a juvenile detention facility in January of 2001. (Plaintiff's Proposed Finding of Fact (PPFOF) ¶ 51.) Detention workers are public employees subject to a collective bargaining agreement ("CBA"). (*Id.* ¶¶ 51-52.)

1

According to the CBA, employees can only be dismissed for "just cause." (Kultgen Aff. ¶ 17, Ex. G, Art. XVII.) The CBA also provides for an elaborate post-termination grievance procedure that former employees can use after they are dismissed. (*Id.* ¶ 17, Ex. G, Art. VIII.)

Delagrave served as a deputy superintendent and oversaw the day-to-day operations at the detention facility including security and personnel issues. (PPFOF ¶¶ 56-57.) Bennett was Delagrave's supervisor. (*Id.* ¶ 55.)

At some point in time (not specified by the parties), a Racine County employee, named Ray Munoz, and a juvenile in the detention center, who has the initials "KT," both told Delagrave that Griffin was using drugs. (*Id.* ¶¶ 63-65.) Accordingly, Delagrave asked Griffin to submit to a drug test on January 22, 2004. (*Id.* ¶ 85.) Griffin agreed to take the drug test, which came back positive for marijuana use. (Defendant's Proposed Finding of Fact (DPFOF ¶ 6.)

On January 23, 2004, the medical review officer told Griffin about the positive drug test. (Affidavit of Mary E. Nelson ¶ 6, Ex. A at 36-37.) The medical review officer also told Griffin that the positive drug test result would be sent to the detention center, and that the detention center would contact Griffin about what would happen next. (*Id.*, Ex. A at 37-38.) Griffin understood that possible discipline, or even termination, could result because of the positive drug test result. (*Id.*, Ex. A at 38.)

2

On the morning of January 27, 2004, Bennett told Griffin that he needed to attend a meeting, and that "his job was on the line." (PPFOF ¶ 89.) A disciplinary meeting was held that morning to discuss the results of Griffin's drug test. (DPFOF ¶ 7.) The following individuals attended the meeting: Delagrave, Griffin, three union representatives, and Marta Kultgen, who was the Human Resources Manager of the Racine County Human Resources Department. (*Id.* ¶ 8.) Prior to the meeting, Griffin was first allowed to confer privately with the union representatives. (*Id.* ¶ 9.)

Delagrave opened the meeting explaining he had received notice that Griffin's drug test was positive. (*Id.* ¶ 11.) Delagrave and Kultgen then afforded Griffin the opportunity to offer an explanation for his positive drug test results. (*Id.* ¶ 12.) Griffin stated there was nothing he wanted to share regarding the test and did not ask for further testing. (*Id.* ¶¶ 13-15, 17.) Failing to provide explanation for his test results, Griffin was terminated. (*Id.* ¶ 17.)

On May 28, 2004, Griffin filed this action pursuant to 42 U.S.C. § 1983, alleging that the Defendants violated his Fourteenth Amendment due process right by not providing him a sufficient hearing both prior to and after his termination. On December 21, 2004, the Defendants filed a motion for summary judgment. Finding the briefs both in support and opposition of this motion unhelpful, the Court withheld judgment on the pending motion and ordered the parties to re-brief the pertinent issues. *Griffin v. Bennett*, 04-CV-512 (June 21, 2005). The Court has received the parties' second round of briefing, and is now equipped to render judgment on the pending motion for summary judgment.

3

## STANDARD OF REVIEW

Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A "material fact" is one which, under the relevant substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact exists if a reasonable juror could find that the evidence supports a verdict for the nonmoving party. *Id.* In an action where an employee alleges a violation of due process in the course of his termination, summary judgment will be precluded if "evidence raises a substantial fact issue as to whether the employees were given an opportunity to rebut the reasons given for his/her termination in a hearing or otherwise." *Russell v. Harrison*, 736 F.2d 283, 290 (5th Cir.1984).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323. When considering the movant's case, the Court should evaluate all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). If the movant meets his burden (by showing an absence of a genuine issue of material fact), the nonmovant may not rest on the pleadings. Instead, the nonmovant must come forward with evidence that there is a genuine issue for

4

trial that would support a reasonable jury verdict on every issue for which he bears the burden of proof at trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253 (1968)); *Celotex Corp.,* 477 U.S. at 322-24. If the nonmoving party bears the burden of proof on a matter at trial, and he is unable "to establish the existence of an element essential to [his] case," summary judgment is appropriate. *Celotex,* 477 U.S. at 322-23.

## DISCUSSION

Griffin alleges that the Defendants violated his Fourteenth Amendment Due Process right by not providing him a sufficient hearing prior to his termination and after his termination.[1]

As an initial matter, Griffin's due process claim depends on him having a property right in his continued employment. *Bd. of Regents v. Roth*, 408 U.S. 564, 576-78 (1972). Property interests "are created and their dimensions are defined by existing rules or

---

[1] In his brief opposing the Defendants' summary judgment motion, Griffin states that he did not receive any pay after January 22, 2004, and therefore, he was also entitled to a hearing prior to January 22, 2004.

On January 22, 2004, Delagrave told Griffin not come to work until after Racine County had reviewed the results of his drug test. (Griffin Aff. ¶ 2.) Griffin received no pay during his time off. (Griffin Aff. ¶ 4.) In other words, Griffin was suspended, not terminated, on January 22, 2004.

Griffin's allegation that he was denied due process prior to his suspension is a new allegation that did not appear in his complaint. Griffin's complaint alleges only one cause of action. His complaint asserts: "Plaintiff hereby alleges that he was denied Due Process of Law with respect to the loss of his liberty and property in the termination of his job on January 27, 2004 by the acts and conduct of the Defendants." No where in his complaint does he claim a lack of due process prior to his suspension on January 22, 2004. Griffin's new allegation in his response brief regarding the need for proceedings prior to January 22, 2004, therefore, is an attempt to amend his complaint, which he is not permitted to do in his brief. *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

5

understandings that stem from an independent source such as state law. . . ." *Id.* at 577. Wisconsin law distinguishes between employment "at-will" and employment that can only be terminated "for cause." The latter receives due process protections. *Flynn v. Kornwolf*, 83 F.3d 924, 926 (7th Cir. 1996).

Griffin's employment with Racine County was governed by a collective bargaining agreement, which specified that employees can only be dismissed "for just cause." (Kultgen Aff. ¶ 17, ex. G, Art. 17.01). Accordingly, Griffin had a property interest in his continued employment, and the Defendants could only terminate him if they provided Griffin due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).

Public employees who have a property interest in their continued employment are entitled to both pre-termination and post-termination hearings. *Gilbert v. Homar*, 520 U.S. 924, 929 (1997). Griffin alleges that he was denied due process both by the alleged insufficiency of his pre-termination hearing, and by the absence of any post-termination hearing. His latter claim can be easily dismissed because, despite the CBA's elaborate grievance procedures for dismissed employees, Griffin never availed himself of those procedures. The Defendants cannot be held liable for denying Griffin a post-termination procedure that Griffin never even attempted to pursue. The Court will turn its analysis, therefore, solely to the question of whether he was afforded a constitutionally sufficient pre-termination hearing.

The pre-termination procedure need only be a "a very limited hearing," *Id.*, and is meant to be "an initial check against mistaken decisions." *Loudermill*, 470 U.S. at 545. This "initial check" is satisfied when the employee is provided (1) oral or written notice of the charges, (2) an explanation of the employer's evidence, and (3) an opportunity to tell his side of the story. *Staples v. City of Milwaukee*, 142 F.3d 383, 385 (7th Cir. 1997). All three elements were met in Griffin's pre-termination hearing.

First, Griffin was provided sufficient notice of the charges against him. Generally, notice of the charges must be given in advance of the hearing to allow "the employee to gather his thoughts and his evidence and to make an informed decision about the best way to respond to the charges." *Id.* at 386. Notice can even be made "a few hours" in advance. *Id.* Indeed, even contemporaneous notice can be sufficient depending on "what has taken place before the hearing, on the nature of the violation the employee is charged with, and on the risk of error if the employee does not have some advance notice of the hearing." *Id.* at 387.

Griffin argues that he was not provided sufficient notice because he was not notified of the disciplinary meeting until the morning of January 27, 2004, shortly before the meeting began. Even if we were to construe this notice as contemporaneous with the meeting, the factors the Seventh Circuit outlined in *Staples* to determine the sufficiency of contemporaneous notice certainly weigh in favor of the Defendants. Griffin knew about his positive drug test result four days before his disciplinary meeting, and, immediately prior to

7

the disciplinary meeting, he was able to confer with union representatives to discuss any possible defense he may have.

Griffin argues, though, that despite knowing about the positive drug test four days prior to the disciplinary meeting, he did not know, until the meeting of January 27, that he would be accused of using illegal drugs *at the work place*. This alleged "surprise" that Griffin experienced, however, contradicts his own deposition testimony. Griffin testified that, prior to his drug test, Delagrave told him "they had received some information regarding [Griffin] using drugs *in the workplace* . . ." (Nelson Supp. Aff., ¶ 3, Ex. D, at 16.) (emphasis added.) Griffin knew his employer suspected that he was using drugs at the workplace not just prior to his disciplinary meeting, but even prior to his drug test. He had no reason to be surprised. Griffin understood why his employer sought a drug test, knew of his positive drug test result, and was able to confer with union representatives *before* his pre-termination hearing. In other words, Griffin was afforded plenty of opportunity to "gather his thoughts and his evidence and to make an informed decision about the best way to respond to the charges," which made the notice he received constitutionally sufficient. *Staples*, 142 F.3d at 386.

In addition to notice, Griffin is entitled to an explanation of the employer's evidence at the pre-termination hearing. Such an explanation was provided here, as there is no dispute that Delagrave opened the disciplinary meeting by telling Griffin they had received news of his positive drug test.

8

Finally, Griffin was given an opportunity to tell his side of the story at the hearing. Both Delagrave and Kultgen asked Griffin if there was anything he had to say about the positive drug test. Griffin responded "no." (DPFOF ¶ 12-13.) Griffin offered no explanation for the positive drug test, nor did he ask for further testing, despite being given an opportunity to make such explanations or requests. Accordingly, Griffin's pre-termination hearing was constitutionally sound, and his § 1983 claim must be dismissed.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Defendants' Motion for Summary Judgment (Docket #36) is **GRANTED.**

The clerk is directed to enter judgment and close this case accordingly.

Dated at Milwaukee, Wisconsin this 6th day of January, 2006.

**BY THE COURT**

s/ Rudolph T. Randa
**Hon. Rudolph T. Randa
Chief Judge**